IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT W. MAUTHE, M.D., P.C.,<br>individually and as the representatives of<br>a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 18 1968 |
| v. | ) ) | CLASS ACTION |
| ITG, INC., ITG INVESTMENT<br>RESEARCH, INC., and M SCIENCE LLC, | ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Robert W. Mauthe, M.D., P.C., ("Plaintiff") brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, allege the following upon information and belief against defendants ITG, Inc., ITG Investment Research, Inc., and M Science LLC (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.    Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.    Defendants sent Plaintiff at least five advertisements by facsimile and in violation of the TCPA. Exhibits A-E. Plaintiff did not expressly consent to receive

Defendants' advertisement by fax. Moreover, Plaintiff does not have an established business relationship with any of the Defendants and Defendants' faxes (Exhibits A-E) do not contain a compliant opt-out notice.

3.     Plaintiff brings this action on behalf of a class of all persons or entities that Defendants sent one or more telephone facsimile messages ("faxes") about Defendants' compensated market research program, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendants' violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.     Defendants' unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

5.     The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement...." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited

2

advertisement" as "**any** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." *Id.*, § 227 (a)(5) (emphasis added).

6.    Defendants' faxes advertise a compensated market research program, a commercially available service. Exhibits A-E.

7.    Other information on Defendants' faxes (Exhibits A-E) is mere pretext or subterfuge for evading the TCPA.

8.    Defendants' clients are companies in the health care industry seeking "in-depth qualitative insights and statistically significant quantitative date" to make "important business decisions." Exhibit F ("ITG Market Research").

9.    On information and belief, Defendants provide a Visa gift card or online promo code to health professionals to participate in surveys and then package the collected market research and other information for Defendants' clients.

10.    Defendants are for-profit businesses.

### PARTIES, JURISDICTION, AND VENUE

11.    Plaintiff, Robert W. Mauthe, M.D., P.C., is a private medical practice in Center Valley, Pennsylvania.

12.    ITG Inc. is a Delaware corporation with its principal place of business in New York, New York.

13.    ITG Investment Research Inc. was a Delaware corporation with its

3

principal place of business in New York, New York.

14.     On July 18, 2016, ITG Investment Research Inc. became M Science LLC.

15.     M Science LLC is a Delaware limited liability company with its principal place of business in New York, New York.

16.     M Science LLC is the successor in interest to ITG Investment Research Inc.

17.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

18.     Personal jurisdiction exists over Defendants in Pennsylvania because Defendants have transacted business within the State and have committed tortious acts within the State.

19.     Venue is proper in the Eastern District of Pennsylvania because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

20.     Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiffs), Defendants are directly liable for violating the TCPA.

21.     Plaintiff has received at least five of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on August 28, 2014 at

4

9:51 is attached as Exhibit A. A true and correct copy of the fax Plaintiff received on August 28, 2014 at 9:55 is attached as Exhibit B. A true and correct copy of the fax Plaintiff received on September 2, 2014 is attached as Exhibit C. A true and correct copy of the fax Plaintiff received on March 20, 2015 is attached as Exhibit D. A true and correct copy of the fax Plaintiff received on March 23, 2015 is attached as Exhibit E.

22.     In this action, Plaintiff intends to discover the total number of other advertisements Defendants sent to Plaintiff and others by fax. Exhibit G, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

23.     Exhibits A-C are each one-page documents Defendants sent by fax advertising compensation to participate in Defendants' telephone interviews. The faxes advertise the commercial availability of Defendants' paid market research program, through which Defendants plan to gather valuable market research and other information or opinions from health professionals for Defendants' clients.

24.     Exhibits D-E are each one-page documents Defendants sent by fax advertising compensation to participate in Defendants' internet survey. The faxes advertise the commercial availability of Defendants' paid online market research program, through which Defendants plan to gather valuable market research and other information or opinions from health professionals for Defendants' clients.

25.     Each of Defendants' advertisements provides a web link to access Defendants' survey. Exhibits A-E.

5

26.    Each of Defendants' faxes is generic invitation. Exhibits A-C are addressed "To: ALL Nurses". (emphasis in original). Exhibits D-E are addressed "To: All Neuros and PMR Specialists".

27.    Each of Defendants' faxes contains ITG's logo and contact information. Exhibits A-E.

28.    Exhibits A-E advertise the commercial availability or quality ITG's market research property, products, or services.

29.    Exhibits A-E do not include the mandatory opt-out notice required by the TCPA. See 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

30.    Plaintiff did not expressly invite or give permission to anyone to send Exhibits A-E or any other advertisement from Defendants to Plaintiff's fax machine.

31.    The faxes are deceptive in that they inform Plaintiff and the other recipients that "to unsubscribe from fax invitations from ITG Market Research please call 1-866-475-5091 to unsubscribe." Exhibits A-E. This statement presupposes that Plaintiff previously subscribed to receive fax invitations from ITG Market. That's not true. Plaintiff never subscribed to receive "fax invitations from ITG Market Research."

32.    On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

33.    Plaintiff and the other class members owe no obligation to protect their

6

fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person sent one or more telephone facsimile messages on or after May 10, 2014 from "ITG Market Research" that invited them to participate for payment or compensation in a survey or telephone interview.

Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about the scope of Defendants' fax advertising practices as well as discovery as to any potential affirmative defenses Defendants may plead.

35. Excluded from the class are Defendants, any entity in which any Defendant has a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

36. In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendants sent to Plaintiff by fax, as well as all advertisements Defendants sent to the other class members.

37. On information and belief, Defendants' fax advertising program involved other, substantially-similar advertisements sent to gather valuable market data and then sell that information to Defendants' clients in the health care

7

industry. Plaintiff intends to locate those advertisements in discovery. Exhibit G, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

38.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

39.     **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from Defendants' records or the records of third parties.

40.     **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

8

a.     Whether Exhibits A-E and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of property, goods or services;

b.     Whether Defendants sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

c.     The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent fax advertisements;

d.     Whether Plaintiff and the other class members should be awarded statutory damages;

e.     If the Court finds that any Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

f.     Whether the Court should enjoin any Defendants from faxing advertisements in the future; and

g.     Whether Defendants' conduct as alleged herein constituted conversion.

41.     **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain

9

the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

42.   **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained undersigned counsel, who are competent and experienced in complex class action litigation, and in TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

43.   **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendants choose to advertise by fax again in the future.

44.   **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual

10

class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

45.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

46.    Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

47.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

48.    On information and belief, Defendants or third parties on behalf of Defendants sent Exhibits A-E to the facsimile machines of Plaintiff and others similarly situated using a telephone facsimile machine, computer, or other device.

49.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

11

50.     Exhibits A-E promote Defendants' commercially available paid market research program. Exhibits A-E.

51.     Plaintiff did not expressly give permission or invitation to receive any advertisement from any Defendant by fax.

52.     Defendants sent Exhibits A-E to Plaintiff and other health professionals offering compensation in exchange for their participation in one or more internet or telephone surveys.

53.     Through Exhibits A-E, Defendants intended to gather opinions and other valuable market research data from participants and then provide that information to Defendants' paying clients in the health care industry.

54.     The TCPA provides a private right of action as follows:

> 3.     Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C)     Both such actions.

47 U.S.C. § 227 (b) (3).

55.     The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

56.     The TCPA requires that every advertisement sent by facsimile must

12

include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

57. Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as Exhibits A-E) to Plaintiff and the other class members without their prior express invitation or permission.

58. Furthermore, Defendants violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. Exhibits A-E.

59. Defendants' faxes do not inform recipients that Defendants' failure to comply with an opt-out request within 30 days is unlawful.

60. Defendants' faxes do not inform the recipient that it has a legal right to request that Defendants not send any future fax.

61. The opt-out information on Exhibits A-E is not "clear" as required by the TCPA. Instead, it includes language that is inconsistent with the law, falsely implies that Plaintiff and some other class members previously invited or consented to receive fax advertisements from ITG—"To unsubscribe"—and falsely implies that Plaintiff and the putative class members have an account with ITG that needs to be "unsubscribed" to avoid future fax advertisements. Exhibits A-E.

62. Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will

be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

63.     The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if Defendants' actions were negligent. 47 U.S.C. § 227 (b) (3).

64.     If Defendants' actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

65.     ITG Inc. is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, instructed ITG Market Research to send the faxes, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, owned the list to which faxes were sent, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

66.     ITG Investment Research Inc. is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

67.     M Science LLC is liable for the fax advertisements as the successor in interest to ITG Investment Research Inc.

68.     Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner

14

consumed in the printing of Defendants' faxes. The subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time, requiring receipt and review Defendants' unlawful fax. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.     That, if it finds Defendants willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may

15

deem just and proper.

## COUNT II
## CONVERSION

69.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

70.     Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendants.

71.     By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

72.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

73.     By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

74.     Defendants knew or should have known that the misappropriation of paper, toner, and employee time was wrongful and without authorization.

75.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for

16

any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

76.    Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award damages;

C.    That the Court award punitive damages;

D.    That the Court award attorney's fees;

E.    That the Court award costs of suit; and

F.    That the Court award such further relief as it may deem just and proper under the circumstances.

17

Respectfully submitted,

Robert W. Mauthe, M.D., P.C., a
Pennsylvania corporation, individually
and as the representative of a class of
similarly-situated persons

By: _____
One of its attorneys

Richard Shenkan (PA 79800)
Shenkan Injury Lawyers, LLC
P.O. Box 7255
New Castle, PA 16107
(412) 716-5800
(888) 769-1774 (fax)
rshenkan@shenkanlaw.com


Phillip A. Bock (*pro hac vice* admission
to be requested)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
(312) 658-5500
(312) 658-5555 (fax)
phil@classlawyers.com

# EXHIBIT A

**ITG Market Research**
**1 Liberty Plaza, 165 Broadway**
**New York, NY 10006**
Phone: 1-800-394-1956
Web: marketresearch.ltg.com

| To:   **ALL Nurses** | **Fax: 610-791-7693** |
|---|---|
| From: ITG Mkt Research - Healthcare | **Fax: 212-246-2457** |

## RE: <u>All Nurses</u> - Catheter Usage in Spinal Cord Injury Patients Study

ITG Market Research, an independent research company in NYC, is currently scheduling telephone interviews with nurses on the topic of <u>Catheter Usage in Spinal Cord Injury Patients.</u>

We are offering a **$200 honorarium** for this approx. 60 minute one-on-one telephone discussion

To see if you qualify, please follow the link below.  We have shortened the link for your convenience:

### Study Link:      http://goo.gl/bVS7m7

*Thank you in advance for your time.  We value your input.*

*Best Regards,*

Recruiting Team

To unsubscribe from fax invitations from ITG Market Research please call 1-866-475-6091 to unsubscribe.

By clicking the above survey link, you acknowledge that you have read and agreed to ITG Market Research's Privacy Policy and Terms and Conditions which can be accessed at http://www.itg.com/terms-of-use/. To obtain the gift associated with this study you must: 1) provide valid contact information including your name, email address, physical address and phone number; 2) complete the survey; 3) be at least 18 years of age; and 4) meet the criteria in the screener questions at the beginning of the survey. ITG Investment Research, Inc. reserves the right in its sole and absolute to discretion to determine whether you qualify for a gift based on, among other things, your responses to the screener questions at the beginning of the survey. Redemptions are limited to accepted respondents. The survey will not be available after the accepted number of responses. Allow 6-8 weeks for delivery. This gift associated with this survey is not redeemable for cash and may not be transferred or sold. This offer is subject he change at any time and is void where prohibited by law.
© 2014 ITG Investment Research, Inc. 1 Liberty Plaza, New York, NY 10006. All rights reserved. Not to be reproduced or retransmitted without permission. This message is not a solicitation or advertisement for purchase/sale of any products and/or services from ITG Market Research.

# EXHIBIT B

08-28-2014 9:55                      212-414-9420                                     D 1/1

**ITG Market Research**
1 Liberty Plaza, 165 Broadway
New York, NY 10006
Phone: 1-800-394-1956
Web: marketresearch.itg.com

| To:   ALL Nurses | Fax: 610-791-7693 |
|---|---|
| From: ITG Mkt Research - Healthcare | Fax: 212-246-2457 |

### RE: All Nurses - Catheter Usage In Spinal Cord Injury Patients Study

ITG Market Research, an independent research company in NYC, is currently scheduling
telephone interviews with nurses on the topic of Catheter Usage in Spinal Cord Injury
Patients.

We are offering a **$200 honorarium** for this approx. 60 minute one-on-one telephone
discussion

To see if you qualify, please follow the link below.  We have shortened the link for your
convenience:

**Study Link:**      http://goo.gl/bVS7m7

*Thank you in advance for your time.  We value your input.*

*Best Regards,*

Recruiting Team

To unsubscribe from fax invitations from ITG Market Research please call 1-866-475-5091 to
unsubscribe.

By clicking the above survey link, you acknowledge that you have read and agreed to ITG Market Research's Privacy Policy and
Terms and Conditions which can be accessed at http://www.itg.com/terms-of-use/. To obtain the gift associated with this
study you must; 1) provide valid contact information including your name, email address, physical address and phone number;
2) complete the survey; 3) be at least 18 years of age; and 4) meet the criteria in the screener questions at the beginning
of the survey.  ITG Investment Research, Inc. reserves the right in its sole and absolute to discretion to determine whether
you qualify for a gift based on, among other things, your responses to the screener questions at the beginning of the
survey.  Redemptions are limited to accepted respondents.  The survey will not be available after the accepted number of
responses.  Allow 6-8 weeks for delivery.  This gift associated with this survey is not redeemable for cash and may not be
transferred or sold.  This offer is subject to change at any time and is void where prohibited by law.
© 2014 ITG Investment Research, Inc.  1 Liberty Plaza, New York, NY 10006.  All rights reserved.  Not to be reproduced or
retransmitted without permission.  This message is not a solicitation or advertisement for purchase/sale of any products
and/or services from ITG Market Research.

# EXHIBIT C

09-02-2014 13:33          212-414-9420                                      D 1/1

**ITG Market Research**
1 Liberty Plaza, 165 Broadway
New York, NY 10006
Phone: 1-800-394-1956
Web: marketresearch.itg.com

**I T G.**

| To:   ALL Nurses | Fax: 610-791-7693 |
|---|---|
| From: ITG Mkt Research - Healthcare | Fax: 212-246-2457 |

## RE: All Nurses - Catheter Usage in Spinal Cord Injury Patients Study

ITG Market Research, an independent research company in NYC, is currently scheduling telephone interviews with nurses on the topic of Catheter Usage in Spinal Cord Injury Patients.

We are offering a **$200 honorarium** for this approx. 60 minute one-on-one telephone discussion.

To see if you qualify, please follow the link below. We have shortened the link for your convenience:

### Study Link:     http://goo.gl/bVS7m7

*Thank you in advance for your time. We value your input.*

*Best Regards,*

Recruiting Team

To unsubscribe from fax invitations from ITG Market Research please call 1-866-475-5091 to unsubscribe.

By clicking the above survey link, you acknowledge that you have read and agreed to ITG Market Research's Privacy Policy and Terms and Conditions which can be accessed at http://www.itg.com/terms-of-use/. To obtain the gift associated with this study you must: 1) provide valid contact information including your name, email address, physical address and phone number; 2) complete the survey; 3) be at least 18 years of age; and 4) meet the criteria in the screener questions at the beginning of the survey.  ITG Investment Research, Inc. reserves the right in its sole and absolute in its discretion to determine whether you qualify for a gift based on, among other things, your responses to the screener questions at the beginning of the survey.  Redemptions are limited to accepted respondents.  The survey will not be available after the accepted number of responses.  Allow 6-8 weeks for delivery.  This gift associated with this survey is not redeemable for cash and may not be transferred or sold.  This offer is subject to change at any time and is void where prohibited by law.
© 2014 ITG Investment Research, Inc.  1 Liberty Plaza, New York, NY 10006.  All rights reserved.  Not to be reproduced or retransmitted without permission. This message is not a solicitation or advertisement for purchase/sale of any products and/or services from ITG Market Research.

# EXHIBIT D

03-20-2015 12:58    212-414-9420

**ITG Market Research**
1 Liberty Plaza, 165 Broadway
New York, NY 10006
Phone: 1-800-394-1956
Web: marketresearch.itg.com

| To: All Neuros and PMR Specialists | Fax: 610-791-7693 |
|---|---|
| From: ITG Mkt Research - Healthcare | Fax: 212-246-2457 |

## RE: Movement Disorder Internet Stud – INCREASED HONORARIUM

*Attn: Neurologists, Movement Specialists and Physical Medicine Physicians*

ITG Market Research, an independent research company in NYC, is currently conducting an Internet study on Neurological Movement Disorders.

We are offering a $60 honorarium for this approx. 25 minute Internet study.

To participate, please type the link in your browser. We have shortened the link for your convenience:

## Survey Link:       http://goo.gl/SjRBQa

*Thank you in advance for your time. We value your input.*

*Best Regards,*

*Recruiting Team*

To unsubscribe from fax invitations from ITG Market Research please call 1-866-475-5091 to unsubscribe.

By clicking the above survey link, you acknowledge that you have read and agreed to ITG Market Research's Privacy Policy and Terms and Conditions which can be accessed at http://www.itg.com/terms-of-use/. To obtain the gift associated with this promotion you must: 1) provide valid contact information including your name, email address, shipping address and phone number; 2) complete the survey; 3) be a United States resident at least 18 years of age; and 4) meet the criteria in the screener questions at the beginning of the survey. ITG Investment Research, Inc. reserves the right in its sole and absolute to discretion to determine whether you qualify for a gift based on, among other things, your responses to the screener questions at the beginning of the survey. The survey will not be available after the first $70 accepted responses. Allow 6-8 weeks for delivery. This gift associated with this survey is not redeemable for cash and may not be transferred or sold. This offer is subject to change at any time and is void where prohibited by law.
© 2012 ITG Investment Research, Inc. 1270 Avenue of the Americas, 19th Floor, New York NY 10020. All rights reserved. Not to be reproduced or retransmitted without permission. This message is not a solicitation or advertisement for purchase/sale of any products and/or services from ITG Market Research.

# EXHIBIT E

03-23-2015 10:40                    212-414-9420

**ITG Market Research**
1 Liberty Plaza, 165 Broadway
New York, NY 10006
Phone: 1-800-394-1956
Web: marketresearch.itg.com

| To: All Neuros and PMR Specialists | Fax: 610-791-7693 |
| --- | --- |
| From: ITG Mkt Research - Healthcare | Fax: 212-246-2457 |

### RE: Movement Disorder Internet Stud – INCREASED HONORARIUM

*Attn: Neurologists, Movement Specialists and Physical Medicine Physicians*

ITG Market Research, an independent research company in NYC, is currently conducting an Internet study on Neurological Movement Disorders.

We are offering a $60 honorarium for this approx. 25 minute Internet study.

To participate, please type the link in your browser. We have shortened the link for your convenience:

## Survey Link:         http://goo.gl/SjRBQa

*Thank you in advance for your time. We value your input.*

*Best Regards,*

Recruiting Team

To unsubscribe from fax invitations from ITG Market Research please call 1-866-475-5091 to unsubscribe.

By clicking the above survey link, you acknowledge that you have read and agreed to ITG Market Research's Privacy Policy and Terms and Conditions which can be accessed at http://www.itg.com/terms-of-use/. To obtain the gift associated with this promotion you must: 1) provide valid contact information including your name, email address, shipping address and phone number; 2) complete the survey; 3) be a United States resident at least 18 years of age; and 4) meet the criteria in the screener questions at the beginning of the survey. ITG Investment Research, Inc. reserves the right in its sole and absolute to discretion to determine whether you qualify for a gift based on, among other things, your responses to the screener questions at the beginning of the survey. The survey will not be available after the first 270 accepted responses. Allow 6-8 weeks for delivery. This gift associated with this survey is not redeemable for cash and may not be transferred or sold. This offer is subject to change at any time and is void where prohibited by law. © 2015 ITG Investment Research, Inc. 1270 Avenue of the Americas, 19th Floor, New York NY 10020. All rights reserved. Not to be reproduced or retransmitted without permission. This message is not a solicitation or advertisement for purchase/sale of any products and/or services from ITG Market Research.

# EXHIBIT F

INTERNET ARCHIVE
WaybackMachine

118 captures
1 Feb 12 - 18 Mar 16

http://www.itg.com/intelligence/itg-market-research    Go

JUL    NOV    Close
◄      ►      Help
2013   2015

Home  /  Intelligence  /  ITG Market Research

# ITG Market Research

Making strategic business decisions shouldn't feel like a roll of the dice. Our industry experts draw on highly credentialed domain authorities, along with the same proprietary market intelligence and empirical data used by our Investment Research group, to create superior, cutting-edge syndicated and custom reports. From broad industry trends to specific event reporting, we deliver the most accurate qualitative and quantitative intelligence while meeting the most ambitious timelines, even down to the granular level.

We efficiently explore and evaluate each industry we cover to deliver the in-depth qualitative insights and statistically significant quantitative data you need to make important business decisions.

### ITG HEALTHCARE MARKET RESEARCH

Tell us your challenge, give us your deadline, and ITG Market Research will step up to deliver high-quality reports that fit your specs and exceed your expectations. Our team draws from a full range of investigative methodologies and a proprietary database containing more than one million physicians, hospital administrators, and other professionals.

### ITG TELECOM MARKET RESEARCH

Our research methodology allows you to look at the market from any angle, in incredible detail  Through triangulated data from multiple proprietary sources, along with actual sku-level sales data, ITG delivers unique, actionable insights no other provider can match.

Learn more about our Market Research solutions at marketresearch.itg.com►

# EXHIBIT G

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) • 312-658-5555 (Fax)

### May 10, 2018

In re: *Robert W. Mauthe, M.D., P.C. v. ITG, Inc., ITG Investment Research, Inc., and M Science LLC.* (ED Pennsylvania).

### Demand for Preservation of All Tangible Documents Including Electronically Stored Information

As part of the Class Action Complaint against ITG, Inc., ITG Investment Research, Inc., and M Science LLC ("Defendants"), plaintiff, Robert W. Mauthe, M.D., P.C., hereby issues a demand for Defendants to preserve all tangible documents, including electronically stored information.

As used in this document, "you" and "your" refers to each Defendant, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and its respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

• Digital communications (e.g., e-mail, voice mail, instant messaging);
• Word processed documents (e.g., Word or WordPerfect documents and drafts);
• Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
• Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
• Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
• Sound Recordings (e.g., .WAV and .MP3 files);
• Video and Animation (e.g., .AVI and .MOV files);
• Databases (e.g., Access, Oracle, SQL Server data, SAP);

1

- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

### A.    Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI regarding the time period of May 2014 to the date You receive this letter. Potentially relevant ESI includes, but is not limited to information:

1. Regarding the events and causes of action described in Plaintiff's Class Action Complaint; and
2. Regarding Your claims or defenses to Plaintiff's Class Action Complaint.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your

2

concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

### B.    Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

• Purging the contents of e-mail repositories by age, capacity or other criteria;
• Using data or media wiping, disposal, erasure or encryption utilities or devices;
• Overwriting, erasing, destroying or discarding back up media;
• Re-assigning, re-imaging or disposing of systems, servers, devices or media;
• Running antivirus or other programs effecting wholesale metadata alteration;
• Releasing or purging online storage repositories;
• Using metadata stripper utilities;
• Disabling server or IM logging; and,
• Executing drive or file defragmentation or compression programs.

### C.    Guard Against Deletion

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

### D.    Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified

image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from April 2013 to today's date as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

### E.   Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### F.   Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless

handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### G.     Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

### H.     Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

### I.     Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access

or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### J.    Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### K.    Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### L.    System Sequestration or Forensically Sound Imaging

We suggest that, with respect to Defendant removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including the so-called "unallocated clusters," holding deleted files.

### M.    Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol,

6

if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

### N.    Do Not Delay Preservation

I'm available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

### O.    Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

Respectfully,


Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
512-739-0390 (cell)
312-658-5515 (direct)
phil@classlawyers.com

7