# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT W. MAUTHE,** individually and as the representative of a class of similarly-situated persons, *Plaintiff,* v. **ITG, INC., et al.,** *Defendants.* | **CIVIL ACTION** <br><br> **No. 18-1968** |

## MEMORANDUM

### I. Introduction & Background

This suit arises from Defendants' alleged sending of five facsimiles ("faxes") to Plaintiff Robert Mauthe, M.D., PC in violation of the Telephone Consumer Protection Act (the "TCPA"). ECF No. 1, ¶ 1. Plaintiff[1] alleges that Defendants sent him and other health professionals advertisements by fax without their express consent "offering compensation in exchange for their participation in one or more internet or telephone surveys." ECF No. 1 at ¶¶ 2 & 52. During the time the faxes were allegedly sent to Plaintiff, Defendants were providing their customers with market research on the healthcare market. Plaintiff claims that as part of the "compensated market research program" Defendants conducted on behalf of their clients, Defendants "gather[ed] opinions and other valuable market

---

[1] Although plaintiff is a professional corporation, we refer to it as though it is Robert W. Mauthe as an individual, just as the Third Circuit did in *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 247 (3d Cir. 2019).

1

research data from participants and then provide[d] that information to Defendants' paying clients in the health care industry." *Id.* at ¶¶ 6 & 53.

Three of the faxes Defendants allegedly sent to Plaintiff are one-page documents that invited Plaintiff to follow an internet link to determine if he qualified to participate in a telephone interview on "Catheter Usage in Spinal Cord Injury Patients." *Id*, Exs. A-C. Those faxes also advised Plaintiff that if he qualified and completed the survey, he would receive $200. *Id.* The other two faxes offered Plaintiff a $50-60 payment to participate in a short internet study on "Neurological Movement Disorders." *Id.*, Exs. D & E.

Defendants filed Motions to Dismiss the Class Action Complaint (ECF Nos. 13 & 20) arguing that the faxes in question were not "advertisements" as defined by the statute and were thus unactionable. The Court denied those motions on November 29, 2018 (ECF Nos. 39 & 40).

On June 4, 2019, Defendant ITG Investment Research, Inc. (hereinafter, "M Science") filed a Motion for Reconsideration (ECF No. 58) requesting that this Court reconsider its denial of M Science's Motion to Dismiss the Class Action Complaint (ECF No. 39) in light of alleged new controlling law announced in *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129 (3d Cir. 2019). Defendant ITG Inc. also filed a Motion for Reconsideration (ECF No. 60) joining in M Science's request. For the reasons set forth below, Defendants' Motions for

2

Reconsideration (ECF Nos. 58 & 60) will be granted without prejudice.

## II. Standard of Review

"The Third Circuit has held that motions for reconsideration are reserved 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Boardakan Rest. LLC v. Atl. Pier Assocs., LLC*, No. 11-5676, 2013 WL 5468264, at *4 (E.D. Pa. Oct. 2, 2013) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Generally, a motion for reconsideration will only be granted on one of the following three grounds: 1) there has been an intervening change in controlling law; 2) new evidence, which was not previously available, has become available; or 3) it is necessary to correct a clear error of law or to prevent manifest injustice." *Id.* (quotations and citations omitted). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Id.* (quotations and citations omitted).

## III. Discussion

In *Mauthe, M.D., P.C. v. Optum Inc.*, the facts of the case were essentially undisputed:

> Defendants maintain a national database of healthcare providers, containing providers' contact information, demographics, specialties, education, and related data. Defendants market, sell, and license the database typically to health care, insurance and pharmaceutical companies, who use it to update their provider directories, identify potential providers to fill gaps in their network of providers, and validate information when processing insurance claims. Obviously, it is important that the information contained in the database be accurate

3

> and Mauthe, who is a healthcare provider, does not contend otherwise.
>
> One of the ways defendants update and verify the information in their database is to send unsolicited faxes to healthcare providers listed in the database, requesting them to respond and correct any outdated or inaccurate information.
>
> ....
>
> The faxes also advise the recipients that "[t]here is no cost to you to participate in this data maintenance initiative. This is not an attempt to sell you anything." *Id.* The fax that defendants sent Mauthe included these provisions.

925 F.3d at 131-32 (3d Cir. 2019).

In opposition to the motion for summary judgment, Mauthe "advance[d] his third-party based liability argument on a theory that, although he was not a purchaser of defendants' products or services, defendants violated the TCPA because they had a profit motive in sending him the fax so that the fax should be regarded as an advertisement." 925 F.3d at 133. Moreover, "Mauthe assert[ed] that defendants sought the information in the fax to enhance the accuracy of their database and thus increase their profits." *Id.*

The Third Circuit rejected Mauthe's argument, affirmed the district court's dismissal of the case, and set forth a clear standard for establishing third-party based liability under the TCPA. In order "to establish third-party based liability under the TCPA a plaintiff must show that the fax: (1) sought to promote or enhance the quality or quantity of a product or services being sold commercially;

4

(2) was reasonably calculated to increase the profits of the sender; and (3) directly or indirectly encouraged the recipient to influence the purchasing decisions of a third party." *Id.* Indeed, "the fax must convey the impression . . . that a seller is trying to make a sale. It is not enough that the sender sent a fax with a profit motive—in order to show that the sender is trying to make a sale, there must be a nexus between the fax and the purchasing decisions of an ultimate purchaser whether the recipient of the fax or a third party." *Id.* (internal quotation and citation omitted).

First, the Court finds that *Optum* presents an intervening change in controlling law as it promulgates a clear standard for third-party based liability actions under the TCPA, which did not exist at the time this Court denied Defendants' motions to dismiss. *See id.* at 133.

Second, the Court finds that Plaintiff fails to state a claim in accordance with the requirements established by *Optum*. Specifically, Plaintiff fails to sufficiently allege how Defendants "directly or indirectly encouraged the recipient to influence the purchasing decisions of a third party." It is undisputed that the "[D]efendants were commissioned by third parties to conduct fax-recruited surveys to gather information that the third parties could incorporate into their own product marketing strategies." ECF No. 61, pg. 6.

Plaintiff, however, further theorizes in his response to Defendants' Motions

5

to Dismiss, that "Defendants sent the faxes to induce recipients to indirectly influence the purchasing decisions of third parties—*i.e.*, the future purchasers of the products of the clients that commissioned Defendants to conduct the surveys in the first place." *Id.*, pg. 7. Though this may be true, the Complaint wholly fails to not only allege the facts necessary to support such a theory of liability in this case, but the Court seriously doubts whether even if Plaintiff could provide sufficient facts to support such a theory of liability, that theory would provide facts adequate to establish that the fax would "convey the impression . . . that a seller is trying to make a sale" such that there would be a "nexus between the fax and the purchasing decisions of an ultimate purchaser" as required under *Optum*.

Just as the Third Circuit recognized in *Optum*, "[t]hough we appreciate the annoyance and/or harassment Mauthe felt receiving unsolicited faxes, [the Court is] constrained in reaching our decision by what the TCPA actually prohibits—it does not prohibit all unsolicited faxes, just advertisements." *Id.* at 135. Nonetheless, the Court will grant Plaintiff leave to amend the Complaint in light of Plaintiff's representations that an "amended complaint could incorporate additional allegations meeting [the *Optum*] test." ECF No. 61, pg. 8.

## IV. Conclusion

For the foregoing reasons, Defendants' Motions for Reconsideration of Defendant's Motion to Dismiss the Class Action Complaint (ECF Nos. 58 & 60)

will be granted without prejudice. Plaintiff is granted leave to file an Amended Complaint on or before July 15, 2019. The failure to file an Amended Complaint by July 15, 2019, will result in dismissal of the case for failure to prosecute without further notice. An appropriate Order follows.

DATED: 7-1-2019

BY THE COURT:

CHAD F. KENNEY, J.